**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| AMANDA MOBERLY,<br><br>              Plaintiff,<br><br>v.<br><br>NOVO NORDISK INC., NOVO NORDISK A/S,<br><br>              Defendants. | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: _____ |

**SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff named below, by and through the undersigned counsel, files this *Short-Form Complaint and Demand for Jury Trial* against the Defendants selected below. Plaintiff adopts and incorporates by reference the allegations, claims, and the relief sought in *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, and any subsequent amended versions of such Master Complaint, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff files this *Short-Form Complaint* as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

1

## IDENTIFICATION OF PARTIES

### Plaintiff(s)

1.      Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s): _____Amanda Leann Riddell-Moberly_____.

2.      If applicable, full name(s) and representative capacity of Plaintiff alleging wrongful death claim: _____, as _____ of the estate of _____, deceased.

3.      If applicable, full name of Plaintiff alleging survival claims, as permitted under state law(s): _____.

4.      If applicable, full name of Plaintiff alleging loss of consortium or loss of services: _____.

### Defendant(s)

5.      Plaintiff/Decedent's Representative is/are suing the following Defendants (check all that apply):

_____X_____ Novo Nordisk Inc.

_____X_____ Novo Nordisk A/S

_____ Eli Lilly and Company

_____ Lilly USA, LLC

_____ other(s) (identify): _____

2

**JURISDICTION AND VENUE**

6.     City and state of Plaintiff's current residence (or in a case brought on behalf of a

Decedent, Decedent's last permanent residence):

    Berea, Kentucky

7.     State where Plaintiff/Decedent was prescribed the GLP-1RA Product(s) at issue:

    Kentucky

8.     State of Plaintiff's/Decedent's residence at time of their use of the GLP-1RA

Product(s) at issue:

    Kentucky

9.     City and state of Plaintiff's/Decedent's residence at time of diagnosis of injury:

    Berea, Kentucky

10.    Jurisdiction is based on:

    __X__   diversity of citizenship pursuant to 28 U.S.C. § 1332

    _____   other (plead in sufficient detail as required by applicable rules):

11.    The District Court(s) where Plaintiff might have otherwise filed this Short Form

Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered:

    Eastern District of Kentucky

12.    Venue is proper in the District Court identified in Paragraph 11 because:

    __X__   a substantial part of the events and omissions giving rise to Plaintiff's

         claims occurred there

_____ other (plead in sufficient detail as required by applicable rules):

_____

_____

13.	If applicable, identify the citizenship of any additional Defendant(s) named above:

_____

## PRODUCT USE

14.	Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):

_____ Ozempic (semaglutide)

_____ Wegovy (semaglutide)

_____ Rybelsus (oral semaglutide)

_____ Victoza (liraglutide)

__X__ Saxenda (liraglutide)

_____ Trulicity (dulaglutide)

_____ Mounjaro (tirzepatide)

_____ Zepbound (tirzepatide)

_____ Other(s) (specify): _____

15.	To the best of Plaintiff's knowledge, Plaintiff/Decedent used GLP-1 RA Product(s) during the following approximate date range (month(s) and year(s)) (if multiple products, specify date range(s) for each product):

February 2022 through March 2023
_____

_____

4

**INJURIES AND DAMAGES**

16.    To the best of Plaintiff's knowledge, as a result of using GLP-1 RA Product(s),

Plaintiff/Decedent suffered the following injuries, including their sequelae (check all that apply):

___X___ Gastroparesis

___X___ Other gastro-intestinal injuries (specify) _____See attachment "B", paragraph 18_____

_____ Ileus

_____ Ischemic Bowel/Ischemic Colitis

_____ Intestinal Obstruction

_____ Necrotizing Pancreatitis

_____ Gallbladder Injury (specify) _____

___X___ Micronutrient Deficiency

_____ Wernicke's encephalopathy

_____ Aspiration

_____ Death

___X___ Additional/Other(s) (specify): _____

17.    Plaintiff's/Decedent's injuries occurred in approximately (month and year)?

September 2022 through present.

_____

_____

_____

5

18.     In addition, as a result of Plaintiff's/Decedent's use of GLP-1 RA Product(s), Plaintiff suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):

__X__ Injury to self

_____ Injury to person represented

__X__ Economic loss

_____ Wrongful death

_____ Survivorship

_____ Loss of services

_____ Loss of consortium

_____ other(s) (specify): _____

6

## CAUSES OF ACTION

19.    In addition to adopting and incorporating by reference the Master Complaint as stated above, more specifically, Plaintiff(s) hereby adopt(s) and incorporate(s) by reference the following Causes of Action and allegations asserted in the Master Complaint (check all that apply):

_____    Count I:    Failure to Warn – Negligence

_____    Count II:    Failure to Warn – Strict Liability

_____    Count III:    Breach of Express Warranty/Failure to Conform to Representations

_____    Count IV:    Breach of Implied Warranty

__X___    Count V:    Fraudulent Concealment/Fraud by Omission

__X___    Count VI:    Fraudulent/Intentional Misrepresentation

__X___    Count VII:    Negligent Misrepresentation/Marketing

__X___    Count VIII: Strict Product Liability Misrepresentation/Marketing

__X___    Count IX:    Innocent Misrepresentation/Marketing

__X___    Count X:    Unfair Trade Practices/Consumer Protection (see below)

_____    Count XI:    Negligence

_____    Count XII:  Negligent Undertaking

__X___    Count XIII: State Product Liability Act (see below)

_____    Count XIV: Wrongful Death

_____    Count XV:  Loss of Consortium

_____    Count XVI: Survival Action

__X___    Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules):

See Attachments "A" and "B".

7

20.    If Plaintiff is asserting a claim pursuant to the unfair trade practices or consumer

protection statutes of any jurisdiction as identified in Count X above:*

    a.    Indicate the specific statute (including subsections) under which Plaintiff(s)

       is/are bringing such claims:

       Ky. Rev. Stat. Ann. § 367.170

    b.    Identify the factual allegations supporting those claims (by subsection, if

       applicable):

       See attachment "B"

*Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21.    If Plaintiff is asserting a claim pursuant to the Product Liability Act ("PLA") of any jurisdiction as identified in Count XIII above:*

    a.    Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims:

       Ky. Rev. Stat. Ann. § 411.300–411.350

    b.    Identify the legal theories identified in Paragraph 19 above (*e.g.*, negligent failure to warn, fraud, etc.) that are subsumed within Plaintiff's PLA claim:

       Failure to Warn – Negligence; Failure to Warn – Strict Liability; Breach of Express Warranty/Failure to Conform to Representations; Breach of Implied Warranty; Negligence.

    c.    Identify the factual allegations supporting those claims:

       Plaintiff incorporates by reference the factual allegations in the Master Complaint and its paragraphs 904-911 as though set forth fully at length herein.

*\* Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22.    If pre-suit notice is required by statute, did Plaintiff provide some form of separate pre-suit notice to Defendant(s)? _____.  If so, attach such notice.

## RELIEF

Plaintiff prays for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the *Master Complaint*, as appropriate, and any additional relief to which Plaintiff may be entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims triable by jury in this action.

Date: ___July 20, 2026_____

Respectfully submitted,

**BURSOR & FISHER, P.A**.

*/s/ Scott A. Bursor*____
    Scott A. Bursor

Scott A. Bursor
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: ozempic@bursor.com

*Counsel for Plaintiff*

**ATTACHMENT "A"**

**FRAUDULENT CONCEALMENT/FRAUD BY OMISSION AND
FRAUDULENT/INTENTIONAL MISREPRESENTATION SUPPLEMENT**

1.      Plaintiff incorporates by reference the factual allegations in the Master Complaint and its paragraphs 721-800 as though set forth fully at length herein.

2.      Plaintiff brings this claim against the Defendants identified in paragraph 5 of the Short Form Complaint ("Defendants").

3.      Plaintiff brings this claim under the statute, and relevant subsections, identified in Paragraph 19 of the Short Form Complaint (the "Statute").

4.      Plaintiff's prescribing physician recommended Saxenda to Plaintiff for chronic weight management/obesity and to reduce progression of liver disease. In reliance upon Defendants' misrepresentations and omissions as set forth herein, Plaintiff used Saxenda without full knowledge of its risks and benefits.

**ATTACHMENT "B"**

**<u>UNFAIR TRADE PRACTICES / CONSUMER PROTECTION SUPPLEMENT</u>**

1.      Plaintiff incorporates by reference the factual allegations in the Master Complaint and its paragraphs 850-65 as though set forth fully at length herein.

2.      Plaintiff brings this claim against the Defendants identified in paragraph 5 of the Short Form Complaint ("Defendants").

3.      Plaintiff brings this claim under the statute, and relevant subsections, identified in Paragraph 20(a) of the Short Form Complaint (the "Statute").

4.      The Kentucky Consumer Protection Act ("Kentucky CPA" or the "Statute") provides that "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Ky. Rev. Stat. Ann. § 367.170.

5.      Plaintiff and/or Defendants are "persons" under the Statute.

6.      Plaintiff is a consumer who purchased one or more GLP-1 RA Products for personal, family, and/or household purposes.

7.      Defendants are the suppliers, manufacturers, advertisers, and/or sellers of the GLP-1 RA Products, subject to liability under the Statute for fraudulent, unfair, deceptive, and unconscionable consumer sales practices.

8.      Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the GLP-1 RA Products into the stream of commerce, and therefore owed not only a duty of reasonable care to avoid causing harm to those that consumed it, such as Plaintiff, but also separate and independent statutory duties to be truthful, fair, accurate, and to not mislead or deceive consumers in connection with the sale of GLP-1 RA Products.

9. Defendants marketed and advertised the GLP-1 RA Products to consumers, physicians, and other healthcare entities in Kentucky. In addition, Defendant(s) sold the GLP-1 RA Products to residents of Kentucky; shipped GLP-1 RA Products to Kentucky; and otherwise engaged in trade or commerce, or conducted business, related to the GLP-1 RA Products in Kentucky. Defendants' misconduct described herein significantly affected Kentucky consumers.

10. As alleged in the Master Complaint, Defendants engaged in unfair competition or unfair, deceptive, misleading, false, fraudulent, or unconscionable acts or practices in violation of the Statute by, among other things:

   a. Misleading consumers regarding the safety risks associated with use of their GLP-1 RA Products and overstating the weight-loss benefits and understating risks from using the GLP-1 RA Products;

   b. Excessively advertising, marketing and overpromoting their GLP-1 RA Products, including turbo-charging the pre-existing extensive direct-to-consumer marketing campaign with use of telehealth providers and promoting the drugs off-label; and

   c. Failing to disclose that they performed research and testing in a manner that would lead to under-reporting of the severe risks of using the GLP-1 RA Products.

11. As described in the Master Complaint, including in the paragraphs cited in paragraph 856 of the Master Complaint as well as paragraphs 447 through 576 of the Master Complaint, at all relevant times, Defendants knew or should have known, including from preclinical trials, premarket clinical trials, post-market surveillance, adverse event reports, and published scientific papers, that the GLP-1 RA Products posed serious health risks to users. Despite this knowledge, Defendants continued to mislead consumers by omitting, understating, or downplaying risks associated with use of their GLP-1 RA Products.

12. As described in the Master Complaint, including in paragraphs 577 through 601 of the Master Complaint, at all relevant times, Defendants knew or should have known that their

13

GLP-1 RA Products are not as effective for weight loss as Defendants claimed. Despite espousing significant weight-loss benefits, Defendants knew that the average person loses only a small percentage of their body weight while on GLP-1 RA Products, a significant percentage of patients experience minimal to no weight loss, many people stop taking GLP-1 RA Products relatively quickly, and many people who discontinue use gain back as much as  — or more than — the weight they lost while using the GLP-1 RA Products. Despite this knowledge, Defendants continued to mislead consumers by overstating the products' weight-loss benefits.

13. The information referenced above that Defendants misrepresented, concealed and did not disclose, was material. A reasonable person, including Plaintiff, would find that information, which was related to their health and well-being, such as the serious adverse health risks associated with the use of the GLP-1 RA Products and the limits of the products' efficacy, to be important when deciding whether to purchase and/or use the GLP-1 RA Products.

14. Defendants intentionally concealed the foregoing material information from consumers, users, prescribers, physicians and other health care providers, including Plaintiff and Plaintiff's health care providers, because to do otherwise would have resulted in fewer prescriptions written for, and fewer purchases of, the GLP-1 RA Products.

15. Defendants violated the Statute by failing to disclose the material health and safety information regarding the GLP-1 RA Products discussed above to consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

16. Defendants violated the Statute by making numerous representations about the weight-loss benefits of taking GLP-1 RA Products while concealing additional information related

14

to the purported weight-loss benefits from consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

17.     Plaintiff's prescribing physician recommended Saxenda to Plaintiff for chronic weight management/obesity and to reduce progression of liver disease. In reliance upon Defendants' misrepresentations and omissions as set forth herein, Plaintiff used Saxenda without full knowledge of its risks and benefits.

18.     As a direct and proximate result of the injuries alleged herein, Plaintiff has suffered severe and progressive gastrointestinal complications involving multiple segments of her digestive tract. Plaintiff was diagnosed with severe slow transit constipation after diagnostic studies, including Sitz marker testing and anorectal manometry, confirmed a significant colonic motility disorder. As a result, Plaintiff underwent an open total colectomy with ileorectal anastomosis in September 2022 after her colon ceased functioning. Following the colectomy, Plaintiff developed a prolonged and recurrent *Clostridioides difficile* (*C. difficile*) infection that persisted for approximately one year and ultimately required treatment with a fecal microbiota transplant. Despite these interventions, Plaintiff continued to experience chronic diarrhea, fecal incontinence, severe abdominal and pelvic pain, persistent vomiting, painful eating, and progressive, substantial weight loss.

Subsequent evaluation by gastroenterology and colorectal specialists has demonstrated that Plaintiff's gastrointestinal dysfunction is not limited to her colon but instead represents pan-gastrointestinal (pan-GI) dysmotility, affecting the stomach, small intestine, and remaining gastrointestinal tract. Diagnostic imaging, small bowel follow-through studies, gastric emptying studies, and specialist evaluations have documented delayed gastrointestinal transit. Most notably, a gastric emptying study objectively confirmed gastroparesis by demonstrating abnormal delayed

gastric emptying, with 86% gastric retention at one hour (normal 30-90%), 50% retention at two hours (normal less than 60%), and 18% retention at four hours (normal less than 10%), the elevated four-hour retention value confirming delayed gastric emptying consistent with gastroparesis. These objective findings establish that Plaintiff's stomach empties abnormally slowly as part of a broader systemic gastrointestinal motility disorder. Treating physicians have specifically concluded that Plaintiff's presentation is consistent with a motility disorder affecting the entire gastrointestinal tract rather than an isolated colonic condition.

Plaintiff has also been diagnosed with pelvic floor dysfunction, contributing to ongoing bowel dysfunction and incontinence. She has undergone extensive treatment, including pelvic floor physical therapy, dietary modifications, prokinetic medication trials, multiple endoscopic and motility evaluations, and continued specialty care, yet her symptoms remain severe and debilitating. As a consequence of her gastrointestinal dysfunction, Plaintiff suffers from significant micronutrient deficiencies, profound fatigue, shortness of breath, dizziness, vision changes, muscle cramps, chronic pain, and malnutrition. She has lost approximately ninety (90) pounds over the past six to seven months due to her inability to tolerate adequate oral intake.

Plaintiff remains under the care of gastroenterology and colorectal specialists and continues to undergo additional diagnostic evaluation, including repeat endoscopy and gastric emptying studies. Depending upon the results of this ongoing workup, her treating physicians will determine whether further invasive treatment, including implantation of a gastric stimulator, placement of a feeding tube, or additional gastrointestinal surgery, is medically necessary. Plaintiff reserves the right to supplement these allegations as additional medical evaluations, testing, and treatment are completed.

19. Defendants knew that the misrepresentations, omissions and concealment of material safety and efficacy information in the GLP-1 RA Products' packaging, labels,

advertisements, promotional materials, websites, and other communications and disclosures rendered them false, deceptive, inadequate, and misleading.

20.    In violation of the Statute, through a pervasive pattern of false and misleading statements and omissions to health care providers and consumers, Defendants engaged in unlawful intentional conduct by overstating benefits of GLP-1 RA Products and omitting or downplaying side effects and complications of the products.

21.    In violation of the Statute, Defendants' conduct described herein constitutes the knowing and willful act, use, or employment of deception, false promise, misrepresentation, and unfair practices, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of goods, merchandise and/or consumer merchandise (*i.e.*, the GLP-1 RA Products), in trade or commerce, and was done with the intention that consumers such as Plaintiff would rely upon such conduct in purchasing or using the GLP-1 RA Products.

22.    Defendants' conduct was fraudulent and deceptive because the material misrepresentations and omissions had the capacity or tendency to deceive and, in fact, did deceive reasonable consumers, including Plaintiff.

23.    Plaintiff justifiably relied on Defendants' misrepresentations and omissions and if Plaintiff had known the information that Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

24.    As a result of such deceptive packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures, Plaintiff purchased and/or used the GLP-1 RA Products in justifiable and reasonable reliance on Defendants misrepresentations and omissions. Defendants expected or should have expected reasonable consumers to rely on these misrepresentation and omissions, in part, because the omitted information directly relates to consumers' health and well-being.

17

25.     Plaintiff at all times acted as a reasonable consumer in relying upon Defendants' misrepresentations and material omissions concerning Defendants' GLP-1 Products in choosing to purchase and/or consume the GLP-1 RA Products prescribed by their health care provider.

26.     The actions and omissions of Defendants are uncured or incurable.

27.     As alleged above, Defendants had actual knowledge of the defective and dangerous condition of the GLP-1 RA Products and failed to take any action to cure those conditions.

28.     As a direct and proximate result of Defendants' misconduct described herein, Plaintiff has suffered serious injuries, economic and non-economic losses, and other damages, all of which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

Accordingly, pursuant to the Statute, Plaintiff seeks to recover statutory, exemplary, treble, and/or punitive damages, costs of suit, and attorneys' fees, and equitable relief as appropriate, and all such other relief as the Court deems proper.